1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REDITHA D. BRENNEMAN,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

Case No. C16-5740-RSM

**ORDER ON SOCIAL SECURITY
DISABILITY**

## I.      INTRODUCTION

      Plaintiff, Reditha D. Brenneman, brings this action pursuant to 42 U.S.C. §§ 405(g), and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security

denying her application for Disability Insurance Benefits (DIB) under Title II of the Social

Security Act.  Dkt. 1.  This matter has been fully briefed and, after reviewing the record in its

entirety, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this case

for further administrative proceedings.

## II.      BACKGROUND

      In June 2011, Ms. Brenneman filed an application for DIB alleging disability

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to
Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as
defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties
should reflect this change.

ORDER ON SOCIAL SECURITY
DISABILITY - 1

commencing on June 1, 2011. Tr. 22, 272. The application was denied initially and upon reconsideration. Tr. 162-168, 170-174. A hearing was held before Administrative Law Judge (ALJ) Riley Atkins on January 2, 2013. Tr. 75-103. ALJ Atkins issued a decision on January 17, 2013, denying Ms. Brenneman's claim. Tr. 132-153. Ms. Brenneman sought review of that decision and on May 2, 2014, the Appeals Council issued an order vacating the hearing decision of January 17, 2013, and remanding the case back to the ALJ. Tr. 154-159. A subsequent hearing was held before ALJ Atkins on November 24, 2014. Tr. 47-73. Ms. Brenneman was represented by counsel, Teal Parham. *Id.* Jenipher Gaffney, a vocational expert (VE), also testified at the hearing. *Id.* On December 22, 2014, ALJ Atkins issued an unfavorable decision. Tr. 22-40. The Appeals Council denied review, and the ALJ's decision became final. Tr. 1-6. Ms. Brenneman then timely filed this judicial action.

### III. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.     EVALUATING DISABILITY

As the claimant, Ms. Brenneman bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work

experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Tackett*, at 1098-99. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the inquiry ends without the need to consider subsequent steps. *Id.*; 20 C.F.R. §§ 404.1520, 416.920. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [2] If she is, disability benefits are denied. *Id.* If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such impairments, she is not disabled. *Id.* If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[2] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R § 404.1572.

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the claimant is able to perform other work, then she is not disabled; if the opposite is true, she is disabled and benefits may be awarded. *Id.*

## VI. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found that Ms. Brenneman last met the insured status requirements of the Social Security Act on December 31, 2013. Tr. 25. The ALJ further found that:

**Step one:** Ms. Brenneman did not engage in substantial gainful activity from June 1, 2011, the alleged onset date, through her date last insured of December 31, 2013.

**Step two:** Through the date last insured, Ms. Brenneman had the following severe impairments: fibromyalgia, history of Meniere's disease (controlled), mild obstructive pulmonary disease, and obesity.

**Step three:** Through the date last insured, these impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity:** Through the date last insured, Ms. Brenneman had the residual functional capacity (RFC) to perform a mixture of sedentary and light work as defined in 20 C.F.R. §§ 404.1567(a) except she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She should not be required to stand and/or walk for more than two hours in an eight-hour workday. She has no specific sitting limitations. The standing, walking, and sitting occurs with normal breaks during an eight-hour day. She can occasionally climb stairs or ramps, but she should not be required to engage in other climbing. She should avoid exposure to environmental irritants, such as noxious gases and fumes, due to a breathing disorder. She should avoid

---

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P. Appendix 1.

serious workplace hazards, i.e. working around unprotected heights or dangerous machinery with moving parts. She can work in a unskilled or low semiskilled work environment.

**Step four:** Through the date last insured, Ms. Brenneman could not perform past relevant work as a caregiver.

**Step five:** Through the date last insured, as there were other jobs that existed in significant numbers in the national economy that Ms. Brenneman could perform, including cashier and assembler, she was not disabled.

Tr. 22-40.

## VII. ISSUES ON APPEAL

Ms. Brenneman argues the ALJ harmfully erred in improperly applying the Medical-Vocational Guidelines ("the grids"). Dkt. 10 at 3-5; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Specifically, Ms. Brenneman contends that the ALJ erred in failing to apply the sedentary grid rule (Rule 201.10) which would have directed a finding of "disabled" at step five. *Id.* Ms. Brenneman also argues the ALJ harmfully erred in: (1) evaluating the treating medical opinions of Anne-Marie B. McCoy, M.D., and Arvi Mallari Generoso, M.D.; (2) evaluating her own symptom testimony; and, (3) failing to address the lay witness statement of her daughter, Jennifer Lewis. Dkt. 10 at 1, 5-16. Ms. Brenneman contends this evidence should be credited as true and the matter should be remanded for an award of benefits. *Id.* As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## VIII. DISCUSSION

### A. Medical Vocational Guidelines ("the grids")

Ms. Brenneman contends that the ALJ erred in failing to apply the sedentary grid rule (Rule 201.10) which would have directed a finding of "disabled" at step five. Dkt. 10 at 3-5; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2. Ms. Brenneman seeks a judgment reversing the ALJ's

1  decision and remanding for an award of benefits on this basis.  *Id.*  The Court disagrees.

2      The Ninth Circuit in *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 (9th Cir. 1989)

3  described the purpose of the grids and the procedure for applying them as follows:

4          In determining whether a claimant is disabled, the ALJ will usually refer
           to the grids, which were adopted by the Secretary in 1978. The grids
5          correlate a claimant's age, education, previous work experience, and
           residual functional capacity to direct a finding of either disabled or not
6          disabled. The Secretary adopted the grids to improve the efficiency of the
           application process and to promote uniform decision-making.  The ALJ
7          must apply the grids if a claimant suffers only from an exertional
           impairment.  In such cases, the rule is simple: the grids provide the
8          answer. Where the grids dictate a finding of disability, the claimant is
           eligible for benefits; where the grids indicate that the claimant is not
           disabled, benefits may not be awarded. However, where a claimant
9          suffers solely from a nonexertional impairment, the grids do not resolve
           the disability question; other testimony is required.  In cases where the
10         claimant suffers from both exertional and nonexertional impairments, the
           situation is more complicated.  First, the grids must be consulted to
11         determine whether a finding of disability can be based on the exertional
           impairments alone. If so, then benefits must be awarded. However, if the
12         exertional impairments alone are insufficient to direct a conclusion of
           disability, then further evidence and analysis are required. In such cases,
           the ALJ must use the grids as a framework for consideration of how
13         much the individual's work capability is further diminished in terms of
           any types of jobs that would be contraindicated by the nonexertional
14         limitations.  In short, the grids serve as a ceiling and the ALJ must
           examine independently the additional adverse consequences resulting
15         from the nonexertionary impairment.

16  *Cooper*, 880 F.2d 1152, 1155-56 (internal citations and quotation marks omitted).  Moreover,

17  Social Security Ruling (SSR) 83-12 provides additional adjudicative guidance where the extent

18  of erosion of the occupational base is unclear.  SSR 83-12, 1983 WL 31251 (Jan. 1, 1983).  In

19  relevant part, SSR 83-12 provides:

20         Where an individual's exertional RFC does not coincide with the
           definition of any one of the ranges of work as defined in sections
21         404.1567 and 416.967 of the regulations [i.e., sedentary, light, and
           medium], the occupational base is affected and may or may not represent
22         a significant number of jobs in terms of the rules directing a conclusion
           as to disability. The adjudicator will consider the extent of any erosion of
           the occupational base and assess its significance.  In some instances, the
23         restriction will be so slight that it would clearly have little effect on the
           occupational base. In cases of considerably greater restriction(s), the

occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious. Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. …

If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31251 (Jan. 1, 1983).

Here, Ms. Brenneman's exertional level, as defined in the RFC, falls between the regulatory definitions of "light" and "sedentary."[5] 20 C.F.R. § 404.1576. Specifically, the RFC limitation to standing or walking two hours in an eight hour day coincides with the sedentary exertional level while the limitation to lifting and carrying 20 pounds occasionally and 10 pounds frequently coincides with the light exertional level. *Id.* Ms. Brenneman argues that the major difference between a light exertional work capacity and a sedentary exertional work capacity is the amount of time an individual is able to stand or walk. Dkt. 10 at 5. Ms. Brenneman therefore contends that, due to her standing and walking limitation, her exertional capacity is

---

[5] The regulations describe "sedentary work" as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1576. The regulations describe "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

ORDER ON SOCIAL SECURITY
DISABILITY - 8

"significantly reduced in terms of the regulatory definition" of "light work." *Id.* Accordingly, Ms. Brenneman contends, pursuant to SSR 83-12, the ALJ should have automatically classified her as limited to sedentary work and found her disabled under grid rule 201.10. *Id.*; *see* SSR 83-12, 1983 WL 31251 (Jan. 1, 1983); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.10. The Court disagrees.

Given Ms. Brenneman's age (52 as of her date last insured)[6], her limited education, and assuming non-transferability of job skills[7], a limitation to a sedentary exertional capacity would direct a finding of "disabled" under the grids whereas a limitation to a light exertional capacity would direct a finding of "not disabled" under the grids. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.10, 202.11. Under these circumstances, Ms. Brenneman's exertional level would fall between two grid rules which direct opposite conclusions. *See id.*; SSR 83-12, 1983 WL 31251 (Jan. 1, 1983). Ms. Brenneman argues that the limitation to walking or standing two hours in an eight hour day significantly reduces the regulatory definition of "light" work and, therefore, she

---

[6] It appears that while the ALJ properly indicated Ms. Brenneman was 52 years old on her date last insured, in the same sentence he mislabels her as "a younger individual age 45-49" instead of an individual "closely approaching advanced age (age 50-54)." Tr. 39; 20 C.F.R. § 404.1563(d) & (e). Neither party points out this discrepancy or argues that it affected the ultimate non-disability determination. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2015) (an error is harmless where it is "inconsequential to the ultimate nondisability determination."). However, as this matter must be remanded for other reasons, on remand the ALJ should also resolve this discrepancy.

[7] The Court notes that even accepting Ms. Brenneman's argument (which the Court does not) that the ALJ should have automatically classified Ms. Brenneman as limited to sedentary work, a finding of disability would not be mandated on this record. Ms. Brenneman had a history of low semi-skilled work and if her skills were found to be transferrable the grids would direct a finding of "not disabled" at both the light and sedentary work levels. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.11, § 202.10, § 202.11, § 202.12. However, the ALJ never determined whether Ms. Brenneman's skills were transferable aside from finding the question immaterial because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Tr. 39. Moreover, contrary to Ms. Brenneman's assertion, while the VE's testimony indicated that there were a sufficient number of unskilled jobs in the national economy that Ms. Brenneman could perform, the VE was never asked, nor did she directly address, whether Ms. Brenneman's job skills were, in fact, transferrable. Dkt. 10 at 4; Tr. 67.

should be classified as sedentary. *Id.* However, this is not what the language of the regulations or the Social Security Rulings indicate. First, the relevant language of SSR 83-12 provides that "if the exertional capacity is significantly reduced in terms of the regulatory definition, it *could* indicate little more than the occupational base for the lower rule and *could* justify a finding of 'Disabled.'" SSR 83-12, 1983 WL 31253, at *5. The Court agrees with the assessment of the district court in *Lopez v. Colvin*, No. 15-00976, 2016 WL 429783, at *3 (C.D. Cal. Feb. 3, 2016) that "[t]his language is not a mandate, but a reminder to the ALJ to consider whether a limitation is so significant that the person should be classified at the lower level of exertion." *Lopez*, 2016 WL 429783, at *3; *contra Merritt v. Colvin*, No. 14-0564, 2015 WL 4039355 (W.D. Wash. July 2, 2015) (finding the ALJ should have applied the sedentary grid rules where the RFC fell between sedentary and light but the claimant was limited to standing or walking two hours in an eight-hour day).

Second, the regulations do not provide that a two-hour limitation on standing and walking requires a sedentary classification. *See* 20 C.F.R. § 404.1576; *Lopez*, 2016 WL 429783, at *3. Rather, while the "primary difference" between "sedentary and most light jobs" is that "*most*" light jobs require a "good deal" of walking and standing, some light jobs do involve "sitting most of the time …with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." SSR 83-10, 1983 WL 31251, at *5; *Lopez*, 2016 WL 429783, at *3. Because Ms. Brenneman's RFC included a mix of light and sedentary exertional requirements, it is reasonable for the ALJ to elicit testimony from a VE regarding the availability of other jobs in the national economy for an individual of Ms. Brenneman's profile and RFC. *See* SSR 83-12, 1983 WL 31253, at *3 (indicating vocational assistance was advisable "[i]n situations where the rules would direct different conclusions, and the individuals exertional

limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work[.]"); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) ("Where the grids do not completely describe the claimant's abilities and limitations … the grids are inapplicable and the ALJ must take the testimony of a VE."). Moreover, here, the VE's actual testimony in response to the ALJ's hypothetical reflecting the RFC limitations indicated that, while the occupational base would be significantly eroded by Ms. Brenneman's standing and walking limitation, there remained a significant number of light level cashier and assembly jobs in the national economy that she would be capable of performing. Tr. 66-68.

Accordingly, the Court finds that the ALJ did not err in failing to find Ms. Brenneman disabled under the grids. However, as discussed below, the ALJ did harmfully err in evaluating other evidence which affected the RFC and step five determinations. Accordingly, in reevaluating the evidence and re-determining the RFC on remand, the ALJ should also reevaluate Ms. Brenneman's ability to perform other work in the national economy at step five with the assistance of additional VE testimony as necessary.

**B.     Ms. Brenneman's Symptom Testimony**

Ms. Brenneman argues the ALJ harmfully erred in discounting her symptom testimony. Dkt. 10 at 11-16. The Court disagrees.

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*, 572 F.3d at 591. "If the claimant meets the first test and there is

no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Here, the ALJ provided a clear and convincing reason for discounting Ms. Brenneman's testimony.

In evaluating the credibility of a claimant's testimony, the ALJ may consider a range of factors including prior inconsistent statements concerning symptoms, inconsistency with the medical evidence, as well as the claimant's daily activities. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Here, the ALJ reasonably discounted the credibility of Ms. Brenneman's testimony based on inconsistent statements concerning the limiting effect of her symptoms. Specifically, the ALJ noted that Ms. Brenneman testified at the hearing in November 2014 that in 2013, prior to her date last insured, she was probably able to walk only a couple of blocks without resting. Tr. 37. However, the ALJ noted that Dr. Shoemaker had indicated in October 2013, that Ms. Brenneman had walked 2.5 miles around a lake. Tr. 37, 891. The ALJ reasonably found Ms. Brenneman's statements regarding her walking capacity inconsistent. Ms. Brenneman appears to contend that she may not have remembered precisely the extent of her limitations a year prior to the November 2014 hearing. Dkt. 10 at 14. However, there is a significant difference between the ability to walk a couple of blocks and the ability to walk 2.5 miles and the ALJ reasonably interpreted the evidence in discounting the credibility of Ms. Brenneman's symptom testimony based on this inconsistency. *See Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) ("Where the evidence

is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").[8]

Accordingly, the ALJ did not err in discounting the credibility of Ms. Brenneman's symptom testimony.

## C. Medical Opinion Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester*, 81 F.3d at 830. Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### 1. Anne-Marie B. McCoy, M.D.

Ms. Brenneman contends the ALJ harmfully erred in discounting the opinion of her treating physician Dr. McCoy. Dkt. 10 at 5-8. The Court agrees.

Dr. McCoy submitted a medical source statement in March 2012, opining that Ms.

---

[8] The ALJ also gave other reasons for discounting Ms. Brenneman's testimony. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Ms. Brenneman's testimony. *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

Brenneman had symptoms of pain in her back as well as generalized pain and fatigue due to fibromyalgia and sacroiliitis. Tr. 790. Dr. McCoy indicated that Ms. Brenneman could tolerate low work stress but that her pain was worsened by stress and that her symptoms were variable with pain ranging from "0-10" on the pain scale. Tr. 790, 793. She further indicated that Ms. Brenneman could sit for four hours in an eight-hour day, stand or walk for two hours in an eight-hour day, that she should be able to change positions, that she could rarely lift ten pounds and occasionally lift less than ten pounds, that she could not kneel and should avoid dust, humidity, fumes and temperature extremes. Tr. 791-792. Dr. McCoy indicated Ms. Brenneman was not a malingerer and that on average she would likely be absent from work three times per month. Tr. 793-794.

The ALJ gave some weight to Dr. McCoy's opinion, incorporating the limitation on standing or walking and the need to avoid respiratory irritants into the RFC. Tr. 36. However, the ALJ rejected Dr. McCoy's lifting limitation in favor of the nonexamining opinion of State agency consultant Norman Staley, M.D. that Ms. Brenneman could lift and/or carry twenty pounds occasionally and ten pounds frequently. Tr. 36, 124. The ALJ credited Dr. Staley's opinion over Dr. McCoy's on the grounds that "the medical evidence summarized above shows the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently." *Id.* This was not a sufficient reason to reject Dr. McCoy's treating opinion. First, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion[.]" *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). While a non-examining opinion "may constitute substantial evidence when it is consistent with other independent evidence in the record", here, the ALJ does not identify any independent evidence "show[ing]" Ms. Brenneman can perform the greater lifting

and carrying requirements provided in Dr. Staley's nonexamining opinion.  Tr. 36; *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (In discounting a treating physician's opinion, "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").  The ALJ's generalized conclusion that Dr. Staley's opinion was consistent with "the medical evidence summarized above" was not a specific, legitimate reason for discounting Dr. McCoy's treating opinion.  Tr. 36.  Nor, in reviewing the ALJ's summary of the summary of the medical evidence is the Court able to discern the ALJ's path in reaching this conclusion.  *Cf. Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, [courts] must uphold it if the agency's path may reasonably be discerned.").  Accordingly, the ALJ erred in discounting Dr. McCoy's treating opinion regarding Ms. Brenneman's lifting limitations in favor of Dr. Staley's nonexamining opinion.  *See Andrews v. Shalala*, 53 F.3d 1035, (9th Cir. 1995) (ALJ must give specific, legitimate reasons for rejecting an examining physician's opinion in favor of a nonexamining expert's opinion).  On remand, the ALJ should reevaluate and reweigh both Dr. McCoy's and Dr. Staley's opinions regarding Ms. Brenneman's lifting ability.

The ALJ also notes that, Dr. McCoy's later examination in April 2014, nearly four months after Ms. Brenneman's date last insured, "did not support the limitations expressed" in her March 2012 opinion.  Tr. 36.  This was also not a valid reason to discount Dr. McCoy's opinion.  First, it is unclear why an examination performed over two years later and after the date last insured necessarily undermines Dr. McCoy's opinion as to Ms. Brenneman's symptoms and limitations in March 2012.  Second, the results of that examination are not, in fact, substantially inconsistent with Dr. McCoy's 2012 opinion.  The ALJ notes that in April 2014, Dr. McCoy indicated Ms. Brenneman was feeling better after losing 20 pounds, using oxygen more

frequently, and using pain medication infrequently, that her COPD and fibromyalgia were stable and depression and anxiety fair.  Tr. 36, 1071-1072.  The ALJ also noted that the physical examination was unremarkable and that Dr. McCoy encouraged Ms. Brenneman to increase her exercise.  *Id.*  However, Dr. McCoy does not indicate that the results of this examination altered her opinion regarding Ms. Brenneman's limitations.  Moreover, Dr. McCoy indicated in her March 2012 opinion that Ms. Brenneman's fibromyalgia symptoms were variable and that her pain could range from "0-10" on a pain scale.  Tr. 790.  The Social Security Administration rulings likewise recognize that the longitudinal record is particularly important in fibromyalgia cases "because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"  SSR 12-2p, 2012 WL 3104869, at *6.  Furthermore, "fibromyalgia is a disease notable for its lack of usual outward signs."  *Neisinger v. Colvin*, No. 2016 WL 2866260, at *4 (W.D. Wash. May 17, 2016); *see Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (9th Cir. 2003).  Thus, the fact that a single examination two years later showed some improvement in Ms. Brenneman's fibromyalgia symptoms, and few objective findings, does not substantially undermine Dr. McCoy's March 2012 opinion as to Ms. Brenneman's limitations.  Accordingly, the ALJ also erred in discounting Dr. McCoy's opinion on this basis.

This error was harmful as the ALJ failed to either properly reject or include all of Dr. McCoy's limitations in the RFC or in the hypothetical to the VE, thereby affecting the ALJ's five determination.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination'" (quoting *Stout*, 454 F.3d at 1055-56)).  Accordingly, on remand, the ALJ should reevaluate Dr. McCoy's opinion that Ms. Brenneman could sit for four hours in an eight-hour

day, that she should be able to change positions, that she could rarely lift ten pounds and occasionally lift less than ten pounds, that she could not kneel, that she could tolerate a low level of work stress, that she should avoid temperature extremes, and that she would likely be absent from work three days per month. Tr. 791-792. The ALJ should also reevaluate and reweigh Dr. Staley's opinion that Ms. Brenneman could lift 20 pounds occasionally and 10 pounds frequently. Tr. 124.

### 2. Arvi Mallari Generoso, M.D.

Ms. Brenneman also argues the ALJ harmfully erred in rejecting the treating opinion of Dr. Generoso. Dkt. 10 at 8. The Court agrees.

In October 2014, Dr. Generoso submitted an opinion indicating that that Ms. Brenneman's "generally poor medical condition" and "chronic pain" limited her to lifting and/or carrying up to ten pounds, sitting for one hour at a time for a total of three hours in an eight-hour workday, standing and/or walking for a half hour to an hour at a time for a total of one to two hours in an eight-hour workday. Tr. 1029-1030. Dr. Generoso further opined that Ms. Brenneman could bend, squat, and reach occasionally but never crawl or climb and that she could use her hands for simple grasping or pushing or pulling but not for fine manipulation. *Id.*

First, the ALJ mistakenly attributes Dr. Generoso's opinion to Dr. McCoy and discounts it in part as inconsistent with Dr. McCoy's other opinions. Tr. 36. Specifically, the ALJ indicates that "Dr. McCoy has identified very little change in the claimant's condition" since her prior opinions. *Id.* Substantial evidence does not support this rationale for discounting Dr. Generoso's opinion as it is based on the incorrect assumption that the opinion belonged to Dr. McCoy and thus was inconsistent with her own prior opinions. Moreover, most of the limitations opined by Dr. Generoso, while differing slightly in some areas, are largely consistent

with the limitations set forth in Dr. McCoy's March 2012 opinion. Tr. 791-792, 1029-1030.

Accordingly, this was not a valid reason to discount Dr. Generoso's opinion.

Second, the ALJ also discounts Dr. Generoso's opinion "because it is very general and does not provide any additional explanations for these opinions." Tr. 36. An ALJ may discount an opinion that is "'conclusory, brief, *and unsupported by the record as a whole or by objective medical findings.*'" *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)). However, even where an opinion is conclusory or brief, an ALJ may not reject that opinion if it is supported by the record, such as the doctor's own treatment notes. *Id.* (Although doctor's opinion was in "check-box" form and contained almost no detail or explanation, the ALJ erred in discounting the opinion where the doctor's own treatment notes and the claimant's testimony supported that opinion). Here, Dr. Generoso's opinion indicates that the limitations set forth are based on Ms. Brenneman's chronic pain and her treatment notes indicate that Ms. Brenneman has multiple chronic pain issues, bilateral bursitis over the hip, and that she has intolerance to bending, sitting for prolonged hours, and standing for prolonged hours. Tr. 1109. Furthermore, Dr. Generoso's treatment notes indicate she also reviewed Dr. McCoy's treatment notes in evaluating Ms. Brenneman. Tr. 1108-1109. Dr. McCoy's treatment notes reflect reports of widespread muscle and hip pain, findings of muscle spasm, and that on physical examination Ms. Brenneman was often noted to be very tender in pretty much any area "even to light touch." Tr. 525, 528, 530, 532, 540, 542, 549, 562, 601, 627, 629, 639. Moreover, as noted above, Dr. Generoso's opinion as to Ms. Brenneman's limitations are largely consistent with the limitations identified in Dr. McCoy's March 2012 opinion. As Dr. Generoso's and Dr. McCoy's treatment notes do appear to provide some support for Dr. Generoso's opinion, the ALJ erred in discounting the opinion as

conclusory, brief and unsupported by the record.

In sum, the ALJ erred in evaluating Dr. Generoso's opinion. Moreover, this error was not harmless as the ALJ failed to either properly reject or include all of Dr. Generoso's limitations in the RFC or in the hypothetical to the VE, thereby affecting the ALJ's step five determination. *See Marsh*, 792 F.3d at 1173. Accordingly, on remand, the ALJ should reevaluate Dr. Generoso's opinion.

**D.    Lay Witness Evidence**

Ms. Brenneman also contends the ALJ erred in failing to evaluate the lay witness statement of her daughter, Jennifer Lewis. Dkt. 10 at 9-11. The Court agrees.

Ms. Lewis submitted a third party function report in July 2011, in which she indicated that Ms. Brenneman tires easily, gets short of breath and has difficulty lifting and carrying things. Tr. 305. Ms. Lewis indicated that because Ms. Brenneman tires easily, her husband does the house and yard work and that she has difficulty with lifting, squatting, bending, standing, reaching, walking, climbing stairs, and with her memory. Tr. 308, 310. Ms. Lewis estimated Ms. Lewis could walk about fifty feet before stopping and resting and that she had to rest five to ten minutes before she resumed walking. Tr. 310. Ms. Lewis also indicated that Ms. Brenneman gets stressed easily, and that she easily forgets things, especially if she is physically active and gets short of breath. Tr. 311. Ms. Lewis also indicated that Ms. Brenneman's medication makes her tired and dizzy. Tr. 312.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1527(f), 416.927(f). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore

*cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Here the ALJ failed to address the entirety of Ms. Lewis' statement. In discussing Ms. Brenneman's activities of daily living, as part of the step two evaluation, the ALJ does note that Ms. Lewis indicated Ms. Brenneman "shopped in stores, walked, drove a car, cared for a pet, managed her finances, and did laundry." Tr. 26. However, the ALJ fails to discuss the bulk of Ms. Lewis' testimony describing Ms. Brenneman's symptoms and impairments and their impact on her functionig. Accordingly, the ALJ erred. *See Nguyen*, 100 F.3d at 1467. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1055. Here, the RFC does not account for all of the limitations indicated by Ms. Lewis' testimony. Tr. 28-29. For instance, the RFC includes no limitations with respect to squatting, bending, reaching, or dealing with stress, all of which Ms. Lewis indicates are difficult for Ms. Brenneman. *Id.* Nor does the RFC include a limitation on the distance Ms. Lewis can walk before resting. *Id.* Under the circumstances, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting Ms. Lewis' testimony, could have reached a different disability determination. *Stout*, 454 F.3d at 1055.

**E.      Scope of Remand**

Ms. Brenneman argues the ALJ should credit the improperly discounted evidence as true and remand this matter for an award of benefits. Dkt. 10. The Court disagrees

In general, the Court has "discretion to remand for further proceedings or to award

benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," and is appropriate "only in 'rare circumstances.'" *Brown–Hunter v. Colvin,* 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). In order for the Court to remand a case for an award of benefits three requirements must be met. First, the Court must conclude that "'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id.* In considering this second requirement the Court must evaluate whether there are any "'outstanding issues'" that must be resolved before a disability determination can be made. *Id.* (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021); *see also Treichler*, 775 F.3d 1101 ("Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we ... [find] the relevant testimony credible as a matter of law, and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding [.]'") (citations omitted).

Even if these three requirements are met, the Court "retains 'flexibility'" in determining the appropriate remedy." *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may also remand for further proceedings "'when the record as a whole creates serious doubt as to whether the

claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). Moreover, if the record is "uncertain and ambiguous," or "where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1105.

As noted above, the ALJ erred in evaluating the opinions of Dr. McCoy, Dr. Generoso and Dr. Staley, as well as in failing to address Ms. Lewis' lay testimony in its entirety. However, the record also contains conflicting medical evidence which must be reweighed and resolved by the ALJ on remand. For instance, there is conflicting opinion evidence from Robert Sapp, M.D., and Dr. Staley regarding, among other things, Ms. Brenneman's sitting and lifting limitations. Tr. 124, 450-454. The Court acknowledges and is sympathetic to the fact that Ms. Brenneman has been waiting over five and a half years for a final resolution of her claim. Dkt. 18 at 7. However, in light of the conflicting opinion evidence, and viewing the record as a whole, this is not a case where there are "no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the [improperly rejected evidence] … were credited." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). Because the record does not "compel a finding of disability", remand for further proceedings, not payment of benefits, is warranted. *Treichler*, 775 F.3d at 1099.

## IX. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. McCoy, Dr. Generoso and Dr.

1    Staley as provided above, evaluate Ms. Lewis' lay witness statement, re-determine the RFC, and

2    reevaluate steps four and five with the assistance of a VE as necessary.

3          DATED this 26th day of May 2017.

4

5

6    RICARDO S. MARTINEZ
     CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23